**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X          **Docket No.**
SAMY LAPOINTE,

                                   Plaintiff,

               -against-                                              **COMPLAINT**

BELLAS ICE CREAM TRUCK, INC., BELLA'S
ICE CREAM NY, INC., & GUS TOUFOS, *In His*          **JURY TRIAL**
*Individual and Official Capacities*.                 **DEMANDED**

                                   *Defendants.*
------------------------------------------------------------X

       PLAINTIFF   SAMY   LAPOINTE,   by   PLAINTIFF'S   attorneys,   PHILLIPS   &

ASSOCIATES,  hereby  complains  with  respect  to  the  DEFENDANTS,  upon  information  and

belief, as follows:

                              **NATURE OF THE CASE**

1.     PLAINTIFF SAMY LAPOINTE complains pursuant to Title VII of the Civil Rights Act

       of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the

       Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. §1981, the New

       York  State  Human  Rights  Law,  New  York  State  Executive  Law  §296,  et. seq.

       ("NYSHRL"),  and  the  New  York  City  Human  Rights  Law,  New  York  City

       Administrative Code § 8-107, et seq. ("NYCHRL") and seeks damages to redress the

       injuries PLAINTIFF has suffered because of being **discriminated against** based on

       PLAINTIFF'S **race/color** and retaliated against for engaging in protected activity.

2.     PLAINTIFF also asserts claims for wage/hour, and wage reporting violations, under New

       York State Labor Law §§ 195, 653 and 740 as PLAINTIFF asserts: that he was not paid

       in accord with minimum wage laws; that DEFENDANTS failed to keep adequate records

       of wages and hours; and that DEFENDANTS terminated PLAINTIFF, in part, for raising

concerns about unlawful practices and safety violations at BELLA'S (Whistleblowing).

3. DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC. owns, operates and controls some of the famous New York ice cream trucks or ice cream truck companies, that serve and adds nostalgic joy to our New York City children, families and neighborhoods during the summer months. Indeed, DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC. boasts about how it serves "*customers in Fresh Meadows, Forest Hills, Jamaica ,Whitestone, and Flushing Queens NY*" and that "*everyone enjoys ice cream from Bella's Ice Cream Truck.*" https://bellasicecreamtruck.com.

4. As such, it is disheartening to know that the owners, operators and managers of DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC., **who serves many communities that are predominantly minority populated, do not respect African American customers or employees (such as PLAINTIFF) and knowingly allows its employees to engage in racially unsavory and abusive employment practices against its African American employees, in the presence of the communities it serves (as described below herein).**

5. PLAINTIFF SAMY LAPOINTE was discriminated against, on the basis of his race/color, when he was employed at DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC., as an "ice cream truck driver."

6. On or about June 21, 2022, PLAINTIFF SAMY LAPOINTE commenced his employment with DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC.

7. PLAINTIFF was advised by DEFENDANT TOUFOS that he would be "in training" for the first three days of his employment.

2

8.   While in training, PLAINTIFF was subjected to racially hostile work environment by his coworkers, and then by his manager, DEFENDANT TOUFOS.

9.   Among other things, PLAINTIFF was repeatedly referred to as  a **"*nigger,*"** in and outside the presence of customers, by his coworker.

10.   In addition, PLAINTIFF noticed that the truck drivers that he trained with were engaging in safety violations, unsavory and unsafe food handling practices, violations of cleanliness and quality standards and violations of the law on a daily basis. Among other things, BELLA'S drivers were routinely smoking marijuana inside the BELLA'S Ice Cream Trucks, while serving customers, and while driving BELLA'S vehicles in reckless and illegal manners.

11.   PLAINTIFF endured the discriminatory work environment at first, but PLAINTIFF complained to DEFENDANT GUS TOUFOS and hoped that DEFENDANT TOUFOS would take action in response.

12.   However, in direct response to PLAINTIFF'S complaints and engagement in protected activity, DEFENDANT GUS TOUFOS advised PLAINTIFF that he was being terminated, right then, on the spot.

13.   **When PLAINTIFF asked why, DEFENDANT TOUFOS stated to PLAINTIFF that he was being terminated because PLAINTIFF "*did not fit the culture*" of his company,** DEFENDANTS BELLA ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM NY, INC.

14.   To PLAINTIFF'S shock, however, none of this information appeared to surprise DEFENDANT GUS TOUFOS, who stated that "*it was not a big deal*" and that the employee that referred to PLAINTIFF as a "nigger" "*always says the N word.*"

15.   DEFENANT TOUFOS further stated that he saw "*no issues*" with the things that

PLAINTIFF complained about and the fact that PLAINTIFF had issues with these things is the reason that PLAINTIFF **"*did not fit the culture*"** and the reason why he did not want PLAINTIFF **"*to work for him any longer.*"**

16. **Apparently, the accepted culture at BELLA'S ICE CREAM and ICE CREAM TRUCKS is to allow unsafe and disgusting food handling practices, violations of law, and racial discrimination. Then, the BELLA'S culture apparently involves firing the victim of the above and/or the employees, who seek a safe and law abiding work environment at BELLA'S.**

17. PLAINTIFF brings this action charging that COLLECTIVE DEFENDANTS, collectively and/or individually, subjected PLAINTIFF to discrimination, based on PLAINTIFF'S race/color in violation of federal, state and city laws, and terminated PLAINTIFF for engaging in protected activity.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

18. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§1331 and 1343.

19. The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State and City law pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Eastern District of New York or the acts complained of occurred therein.

21. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on _____December 7_____, 2022; (b) receiving a Notice of Right to Sue from the EEOC on or about _____August 18_____, 2023; PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant

action.

22. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

23. **PLAINTIFF SAMY LAPOINTE (hereinafter "PLAINTIFF")** is a thirty-eight-year-old African American male. At all times relevant, PLAINTIFF was employed at **DEFENDANT BELLAS ICE CREAM TRUCK, INC. and/or BELLA'S ICE CREAM.**

24. **DEFENDANT BELLAS ICE CREAM TRUCK, INC. and BELLAS ICE CREAM NY, INC. (hereinafter, "DEFENDANT BELLA'S")** are and/or is a Domestic Business Corporation and operates under the laws of the State of New York. Upon information and belief, DEFENDANT BELLA'S employs 15 or more employees.

25. **DEFENDANT GUS TOUFOS (hereinafter "DEFENDANT TOUFOS")** is the owner of **DEFENDANT BELLA'S ICE CREAM.** As the owner of DEFENDANT BELLA'S ICE CREAM, DEFENDANT TOUFOS had the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT TOUFOS is being sued herein in his individual and official capacities.

26. **DEFENDANTS BELLA'S and DEFENDANT TOUFOS** are collectively referred to herein as "**COLLECTIVE DEFENDANTS.**"

## FACTUAL ALLEGATIONS

27. PLAINTIFF thirty-eight year old African-American, Black, male.

28. On or about June 21, 2022, PLAINTIFF commenced his employment with DEFENDANT BELLA'S ICE CREAM as an "ice cream truck driver."

29. As an ice cream truck driver, PLAINTIFF'S salary was supposed to be twenty-five percent of the profit from his ice cream sales.

5

30. In this regard, particularly during summer months when the business is active and busy, PLAINTIFF had a reasonable expectation of receiving considerable compensation from sales, the amount of which, could only be known by DEFENDANTS at this time.

31. On his first day of work, PLAINTIFF was advised by DEFENDANT TOUFOS that the first three days of his employment would be training alongside another driver in one of BELLA'S ice cream trucks.

32. DEFENDANT TOUFOS advised PLAINTIFF that although the training was unpaid, he would provide PLAINTIFF with a daily stipend of $50 to cover the costs of PLAINTIFF'S commute.

33. As PLAINTIFF was being required by BELLA'S: **[1]** to train as a necessary for the position, **[2]** for several hours each day, **[3]** to actually work during said training and/or to interact with and serve customers, and **[4]** said training was required before PLAINTIFF could start working on his own, DEFENDANT BELLA'S knew and/or should have known that they had to properly compensate PLAINTIFF for said training and document the hours that PLAINTIFF worked.

34. BELLA'S DEFENDANTS could not legally allow or cause PLAINTIFF to "train" as an employee without paying PLAINTIFF, at least, the minimum wage of $15 per hour.

35. BELLA DEFENDANTS were also required to provide PLAINTIFF with proper employment documents pursuant to his employment.

36. BELLA'S purported "daily stipend" to PLAINTIFF could only cover 3 hours of work without violating New York and federal labor laws.

37. PLAINTIFF was expected to work more than three hours on these training days.

38. PLAINTIFF was paid below minimum wage for these days in which PLAINTIFF was required and expected to "train."

6

39. PLAINTIFF'S training involved shadowing his colleagues in the ice cream truck, operating the truck (at times), learning how to operate the equipment in the truck, servicing customers, and assisting the other driver assigned to the truck in whatever manner that was necessary.

40. On PLAINTIFF'S first day, PLAINTIFF was paired with a Hispanic male and/or a non-African American individual, whose name is unknown to PLAINTIFF and known to DEFENDANTS **(hereinafter "Employee John Doe 1")**.

41. PLAINTIFF rode in the ice cream truck with Employee John Doe 1 and observed that Employee John Doe 1 drove the ice cream truck wildly and recklessly, at the maximum speed(s), and would run red lights as he raced from location to location.

42. PLAINTIFF immediately became concerned for his safety.

43. As the ice cream truck was only equipped with one seat – the driver's seat - PLAINTIFF was forced to sit on two crates in the back of the truck.

44. PLAINTIFF, concerned because he was not seated in an actual seat and not belted in, expressed his safety concerns to his colleague.

45. In response, Employee John Doe 1 callously stated to PLAINTIFF that "*the last person who complained about his driving was fired*" and that if PLAINTIFF "*could not handle it, then* [PLAINTIFF] *couldn't handle the job*."

46. PLAINTIFF was faced with immediate threats to his employment for raising concerns about safety, violation of laws, and for whistleblowing to John Doe Employee 1, who was supervising PLAINTIFF at the time.

47. Employee John Doe 1's conduct and response was the type that would dissuade any reasonable employee from raising concerns about safety violations at BELLA'S.

48. Given that it was PLAINTIFF'S first day on the job, PLAINTIFF did not complain any

further because he did not want to attract negative attention to himself or jeopardize his employment.

49.   On this first day, PLAINTIFF worked/trained more than 3 hours. Indeed, PLAINTIFF worked at least 9 hours.

50.   On or about June 22, 2022, PLAINTIFF'S second day, PLAINTIFF was paired with a different driver, a Caucasian/White male, whose name is unknown to PLAINTIFF at this time and is known to DEFENDANTS **(hereinafter "Employee John Doe 2")**.

51.   Upon commencing their shift, Employee John Doe 2 exclaimed that he *"ran out of weed"* (*i.e.* marijuana) and, with the PLAINTIFF in the ice cream truck, immediately drove to his home to pick up some more.

52.   Again, PLAINTIFF was made to be concerned for his safety as Employee John Doe Two 2 was operating the BELLA'S ice cream truck, under the influence of drugs and/or marijuana, was utilizing marijuana while in the truck and serving customers, and needed the drug so badly that he detoured from the job to go home to retrieve more.

53.   PLAINTIFF was also concerned as John Doe 2 did not wash his hands after rolling and smoking marijuana "joints" in the truck, and served customers without engaging in sanitary measures.

54.   Again, PLAINTIFF did not complain because it was his second day on the job and did not want to risk his employment.

55.   On this second day, PLAINTIFF worked/trained more than 3 hours. Indeed, PLAINTIFF worked at least nine hours this day as well.

56.   On or about June 23, 2022, PLAINTIFF'S third day of training, PLAINTIFF was once again paired with Employee John Doe 2  - the Caucasian/White male employee.

57.   Upon commencing their shift, Employee John Doe 2 drove the ice cream truck to a local

elementary school.

58.  As he was driving, he explained to PLAINTIFF that school was about to be dismissed and that this was a good opportunity to make a lot of sales.

59.  Upon arriving at the elementary school, Employee John Doe 2 instructed PLAINTIFF to make sales and interact with the students and their families, while Employee John Doe 2 sat in the back of the ice cream truck, rolling marijuana cigarettes and/or smoking marijuana.

60.  Outrageously, and embarrassingly, John Doe 2 smoked marijuana in the truck, while PLAINTIFF was serving customers and the smell of marijuana was evident everywhere.

61.  PLAINTIFF, meanwhile, tried to overcompensate for Employee John Doe 2, who was visible to those outside of the ice cream truck, by focusing on the customers and providing great customer service.

62.  PLAINTIFF's customers were receptive to his service and responded by leaving large tips for PLAINTIFF.

63.  PLAINTIFF, excited by the reception from his customers and the amounts of tips he received, excitedly shared this news with Employee John Doe 2.

64.  In response, Employee John Doe 2 announced that he (John Doe 2) would now start selling and he instructed PLAINTIFF to move away from the window.

65.  PLAINTIFF asked Employee John Doe 2 if he could remain at the window since this was his last day of training and he wanted to ensure that he was adequately prepared to be on his own the next day.

66.  All of a sudden, Employee John Doe 2 became upset at PLAINTIFF for asking to remain at the window and began to spew racially derogatory words at PLAINTIFF, including calling PLAINTIFF "*nigger*" repeatedly, in the presence of the customers.

67.    Employee John Doe 2 did not say the racially derogatory words to or against PLAINTIFF at any time before Employee John Doe 2 became upset with PLAINTIFF.

68.    Once employee John Doe 2 became enraged at PLAINTIFF, Employee John Doe 2 could not control himself and used the word against PLAINTIFF repeatedly.

69.    PLAINTIFF, embarrassed and caused to be upset by the racially hostile scene that Employee John Doe 2 was creating, quietly exited the vehicle and walked across the street to remove himself from the situation.

70.    PLAINTIFF waited a few minutes across the street to allow himself and Employee John Doe 2 to calm down before PLAINTIFF returned to the ice cream truck.

71.    Upon PLAINTIFF'S return to the ice cream truck, Employee John Doe completed his sales and then drove to the next location - a local park.

72.    PLAINTIFF was surprised once he arrived at the local park and encountered the driver (Employee John Doe 1), who PLAINTIFF shadowed on his first day of work/training.

73.    PLAINTIFF believes that John Doe Employee 2, complained to John Doe Employee 1, and asked John Doe Employee 1 to take PLAINTIFF into John Doe Employee 1's vehicle for the rest of the day.

74.    Employee John Doe 1 then asked PLAINTIFF to get into his ice cream truck and advised PLAINTIFF that they would be riding together the rest of the day.

75.    During his ride with John Doe Employee 1, PLAINTIFF complained to John Doe Employee 1 about the conduct of John Doe Employee 2, which included the fact that he was smoking marijuana in the truck while PLAINTIFF served customers, and then subjected PLAINTIFF to a racist tirade.

76.    In response, John Doe Employee 1 was unmoved. In fact, John Doe Employee 1 then admitted that he too smokes marijuana while working, but that he smokes marijuana in

vape form.

77. John Doe Employee 1 had nothing to say about PLAINTIFF being abused with racial epithets and was not surprised by same either.

78. PLAINTIFF was shocked by this admission and realized that it was part of the culture of BELLA'S.

79. PLAINTIFF finished his shift with Employee John Doe 1 and returned to the depot at the end of the day, where PLAINTIFF spoke briefly with DEFENDANT TOUFOS and then went home for the day.

80. PLAINTIFF had the next few days off and then, days later, PLAINTIFF contacted DEFENDANT TOUFOS to find out about work and his work schedule.

81. PLAINTIFF called DEFENDANT TOUFOS and during this conversation, PLAINTIFF told DEFENDANT TOUFOS about everything he experienced with Employees John Does 1 and 2, including, but not limited to: **[1]** the use and smoking of marijuana in the truck while customers were being serviced and while the truck was being driven by John Doe 2, **[2]** the erratic and unsafe operation of the vehicles, which included frequent speeding and breaking stoplights/signs, **[3]** unsanitary practices by John Does 1 and 2, and **[4]** PLAINTIFF being verbally racially attacked and referred to as a nigger by John Doe 2.

82. To PLAINTIFF'S shock and surprise, DEFENDANT TOUFOS responded: ***"That's just how it is."***

83. But then, to add insult to injury, DEFENDANT TOUFOS told PLAINTIFF that PLAINTIFF'S ***"services were no longer needed"*** and that PLAINTIFF was being terminated.

84. When PLAINTIFF asked why he was being terminated, DEFENDANT TOUFOS stated

to PLAINTIFF that it was because PLAINTIFF *"did not fit the culture"* at DEFENDANT BELLA'S.

85. DEFENDANT TOUFOS further stated that all of the things PLAINTIFF raised concerns about were *"not a big deal"* and that Employee John Doe 2 *"always says the N word."*

86. DEFENANT TOUFOS further stated that he saw absolutely *"no issues"* with the things that PLAINTIFF complained about and the fact that PLAINTIFF had issues with these things, including Employee John Doe 2's use of the discriminatory and derogatory language, is the reason that PLAINTIFF *"did not fit the culture"* and the reason why he did not want PLAINTIFF *"to work for him any longer."*

87. PLAINTIFF was shocked, confused, and extremely insulted that DEFENDANT TOUFOS did not see any issues with PLAINTIFF'S colleague calling him a "nigger" while in front of customers.

88. PLAINTIFF was also shocked that he was being terminated for objecting to the discriminatory conduct and DEFENDANT TOUFOS was aware of such conduct but did not see any issues with the same.

89. PLAINTIFF was also being terminated, in part, for **whistleblowing** and for complaining to DEFENDANT TOUFOS about illegal, unsanitary, unsavory, and discriminatory conduct at BELLA'S.

90. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employees' race, was unlawful.

91. DEFENDANT TOUFOS also knew or should have known that terminating PLAINTIFF for objecting to and/or making a protected complaint is unlawful and retaliatory.

92. DEFENDANT TOUFOS also knew or should have known that terminating PLAINTIFF

12

for objecting to illegal, unsafe and unsanitary issues in the BELLA'S trucks is unlawful and retaliatory.

93. Upon information and belief, DEFENDANT BELLA'S ICE CREAM did not have an anti-discrimination policy in place and/or did not train, counsel, or make its employees aware of the same.

94. DEFENDANT TOUFOS did not train his employees with regard to discriminatory practices and DEFENDANT TOUFOS was not trained, supervised or instructed with regard to discriminatory practices at DEFENDANT BELLA'S ICE CREAM.

95. If DEFENDANT BELLA'S ICE CREAM did have an anti-discrimination policy in place, such anti-discrimination policies were futile and/or not taken seriously by COLLECTIVE DEFENDANTS – to the detriment of PLAINTIFF.

96. COLLECTIVE DEFENDANTS did not have a complaint procedure for employees to make complaints or address concerns about discriminatory practices at DEFENDANT BELLA'S ICE CREAM.

97. DEFENDANT TOUFOS refused to prevent or control known (and ongoing) discrimination or the discriminatory hostile work environment at DEFENDANT BELLA'S ICE CREAM - to the detriment of PLAINTIFF.

98. DEFENDANT TOUFOS acted pursuant to his authority as owner and operator of the DEFENDANT BELLA'S ICE CREAM.

99. BELLA'S DEFENDANTS actually encouraged its employees to break laws (such as moving violations in the trucks) and willingly allowed them to engage in safety and sanitary violations.

100. DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

101. DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe 2 – as evinced by his statement that John Doe 2 *"always says the N word"* – demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

102. Despite COLLECTIVE DEFENDANTS clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy the situation.

103. COLLECTIVE DEFENDANTS had no good faith business justification for their conduct against PLAINTIFF.

104. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and caused emotional distress.

105. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of employment and employment opportunities, loss of bonus, loss of benefits, loss of time and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, humiliation, stress, anxiety, loss of enjoyment of life, and other non-pecuniary losses.

106. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

107. As such, PLAINTIFF demands punitive damages as against COLLECTIVE DEFENDEANTS, jointly and severally.

**AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER TITLE VII**
**(*Against COLLECTIVE DEFENDANTS*)**

14

108.   PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

109.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the above-named COLLECTIVE DEFENDANTS. PLAINTIFF complains of COLLECTIVE DEFENDANTS' violation of Title VII's prohibition against discrimination, in whole or in part, based upon an employee's race/color.

110.   COLLECTIVE DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §§2000e *et seq*., by discriminating against PLAINTIFF because of PLAINTIFF'S race/color.

111.   PLAINTIFF was the victim of outright discrimination by COLLECTIVE DEFENDANTS based on PLAINTIFF'S race/color.

112.   PLAINTIFF belongs to a protected class (African-American).

113.   PLAINTIFF complained to DEFENDANT TOUFOS about his colleague, John Doe, calling him a "*nigger*".

114.   To PLAINTIFF'S shock, this information did not appear to surprise DEFENDANT TOUFOS who stated that "*it was not a big deal*" and that John Doe "*always says the N word*."

115.   PLAINTIFF was shocked, confused, and extremely insulted that DEFENDANT TOUFOS did not see any issues with the PLAINTIFF'S colleague calling him a racially derogatory term.

116.   As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employees' race, was

15

unlawful.

117. DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

118. DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe *"always says the N word"* - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

119. Despite COLLECTIVE DEFENDANTS clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy the situation.

120. COLLECTIVE DEFENDANTS had no good faith business justification for any of their actions alleged herein.

121. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

122. Because of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of employment, loss of employment opportunities, the loss of a salary, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

123. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

124. PLAINTIFF is entitled to the maximum amount allowable under this law.

**AS A *SECOND* CAUSE OF ACTION**

16

## FOR RETALIATION UNDER TITLE VII
### (Against COLLECTIVE DEFENDANTS)

125. Plaintiff repeats and realleged each and every allegation made in the above paragraphs of this complaint.

126. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

127. COLLECTIVE DEFENDANTS engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by discriminating against PLAINTIFF with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of COLLECTIVE DEFENDANTS.

128. After completing his training, PLAINTIFF was shocked when DEFENDANT TOUFOS explained to PLAINTIFF that his "*services were no longer needed*" because he "*did not fit the culture*" of his company.

129. DEFENANT TOUFOS further stated that he saw absolutely "*no issues*" in the things that PLAINTIFF complained about, including John Doe's use of the discriminatory and derogatory term, and the fact that PLAINTIFF had issues with these things is the reason that PLAINTIFF "did not fit the culture" and the reason why he did not want PLAINTIFF "*to work for him any longer*".

130. PLAINTIFF was shocked that he was being terminated for objecting to the discriminatory conduct and that DEFENDANT TOUFOS was aware of such conduct but did not see any issues with the same.

17

131. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employees' race, was unlawful.

132. DEFENDANT TOUFOS also knew or should have known that terminating PLAINTIFF for objecting to and/or making a protected complaint is unlawful and retaliatory.

133. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

134. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, adverse employment actions, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

135. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

### AS A *THIRD* CAUSE OF ACTION
### FOR *DISCRIMINATION* UNDER *42 U.S.C.* § 1981 *(As Amended)*
### *(Against All DEFENDANTS Collectively and Individually)*

136. PLAINTIFF repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

137. 42 U.S.C. § 1981 states in relevant part as follows:

**(a) Statement of equal rights**
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "Make and enforce contracts" defined**

18

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

138. PLAINTIFF, who is African American/Black, was discriminated against, denied equal enjoyment of benefits and privileges of employment, and removed from employment because of his race/color as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

139. PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful discrimination and retaliation at DEFENDANT BELLA'S ICE CREAM by his colleague with the knowledge of DEFENDANT TOUFOS.

140. PLAINTIFF complained to DEFENDANT TOUFOS about the discriminatory abuse he faced at the hand of his colleague.

141. DEFENANT TOUFOS, in turn, stated that he saw absolutely "*no issues*" in the things that PLAINTIFF complained about, including John Doe's use of the discriminatory and derogatory term, and the fact that PLAINTIFF had issues with these things is the reason that PLAINTIFF "did not fit the culture" and the reason why he did not want PLAINTIFF "*to work for him any longer*".

142. DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe "*always says the N word*" - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

143. Despite COLLECTIVE DEFENDANTS clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy

the situation.

144. PLAINTIFF was terminated, in part, for being African-American and for complaining about his colleagues use of a racial epitaph and a word that is offensive to African-Americans.

145. As a result, Plaintiff was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

146. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

147. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

## AS A *FOURTH* CAUSE OF ACTION FOR *DISCRIMINATION* UNDER NEW YORK STATE EXECUTIVE LAW

148. PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

149. New York State Executive Law §296 (1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race,** creed, **color**, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

150. PLAINTIFF was the victim of outright discrimination by COLLECTIVE DEFENANTS

based on PLAINTIFF'S race/color.

151. PLAINTIFF belongs to a protected class (African-American).

152. PLAINTIFF complained to DEFENDANT TOUFOS about his colleague, John Doe, calling him a "*nigger*".

153. To PLAINTIFF'S shock, however, this information did not appear to surprise DEFENDANT TOUFOS who stated that "*it was not a big deal*" and that John Doe "*always says the N word.*"

154. PLAINTIFF was shocked, confused, and extremely insulted that DEFENDANT TOUFOS did not see any issues with the PLAINTIFF'S colleague calling him a racially derogatory term.

155. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employee's race, was unlawful.

156. DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

157. DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe "*always says the N word*" - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

158. Despite COLLECTIVE DEFENDANTS' clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy the situation.

159. COLLECTIVE DEFENDANTS had no good faith business justification for any of their

actions alleged herein.

160. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

161. Because of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of employment, loss of employment opportunities, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

162. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

163. PLAINTIFF is entitled to the maximum amount allowable under this law.

### AS A *FIFTH* CAUSE OF ACTION FOR RETALIATION UNDER THE NY STATE HUMAN RIGHTS LAW

164. PLAINTIFF repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

165. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

166. COLLECTIVE DEFENDANTS violated this section as set forth herein.

167. DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of his race/color and for engaging in protected activity by complaining about the discriminatory harassment that he was subjected to by coworkers.

168. Upon engaging in protected activity, as raising concerns about racially-charged and

discriminatory conduct by BELLA'S employees against PLAINTIFF, PLAINTIFF was told that he "*did not fit the culture*" of BELLA'S.

169. By admission of DEFENDANT TOUFOS, the "culture" of BELLA'S is to allow employees to freely engage in discriminatory conduct, with the knowledge and blessings of BELLA'S owner, DEFENDANT TOUFOS.

170. PLAINTIFF was terminated, in whole or in part, based on his engagement in protected activity at BELLA'S.

171. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

172. Because of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of employment, loss of employment opportunities, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

173. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

174. PLAINTIFF is entitled to the maximum amount allowable under this law.

**AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION & RETALIATION* UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY* (As and Against Individual Defendant TOUFOS)**

175. PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

176. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing

of any acts forbidden under this article, or attempt to do so."

177. DEFENDANT TOUFOS engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct of DEFENDANT BELLA'S ICE CREAM.

178. DEFENDANT TOUFOS, as owner of DEFENDANT BELLA'S ICE CREAM, is liable for aiding and abetting DEFENDANT BELLA'S ICE CREAM in the discrimination and wrongful retaliation faced by PLAINTIFF.

179. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employee's race. was unlawful.

180. DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

181. DEFENDANT TOUFOS' lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe "*always says the N word*" - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

182. Despite DEFENDANT TOUFOS' clear knowledge of the discriminatory actions against PLAINTIFF, DEFENDANT TOUFOS did not make any effort to remedy the situation.

183. But for DEFENDANT TOUFOS' status at DEFENDANT BELLA'S ICE CREAM, DEFENDANT BELLA'S ICE CREAM would not have been able to discriminate against PLAINTIFF.

184. Because of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

24

185. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of employment, loss of employment opportunities, the loss of a salary/pay, benefits, special damages and other compensation, which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

186. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

187. PLAINTIFF is entitled to the maximum amount allowable under this law.

## AS A *SEVENTH* CAUSE OF ACTION
## *DISCRIMINATION* UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

188. PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

189. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, **color**, national origin, gender**,** disability**,** marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

190. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions and engaged in unlawful discriminatory practices by discriminating against PLAINTIFF because of his race.

191. PLAINTIFF was the victim of outright discrimination by COLLECTIVE

DEFENDANTS based on PLAINTIFF'S race/color.

192. PLAINTIFF belongs to a protected class (African-American).

193. PLAINTIFF complained to DEFENDANT TOUFOS about his colleague, John Doe, calling him a "*nigger*".

194. To PLAINTIFF'S shock, this information did not appear to surprise DEFENDANT TOUFOS who stated that "*it was not a big deal*" and that John Doe "*always says the N word*."

195. PLAINTIFF was shocked, confused, and extremely insulted that DEFENDANT TOUFOS did not see any issues with the PLAINTIFF'S colleague calling him a racially derogatory term.

196. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employee's race, was unlawful.

197. DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

198. DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe "*always says the N word*" - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

199. Despite COLLECTIVE DEFENDANTS clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy the situation.

200. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

201.  As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, adverse employment actions, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

202.  COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS AN EIGHTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

203.  PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

204.  The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

205.  COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of COLLECTIVE DEFENDANTS.

206.  After completing his training, PLAINTIFF was shocked when DEFENDANT TOUFOS explained to PLAINTIFF that his "*services were no longer needed*" because he "*did not fit the culture*" of his company.

207.  DEFENANT TOUFOS further stated that he saw absolutely "*no issues*" in the things that PLAINTIFF complained about, including John Doe's use of the discriminatory and

27

derogatory term, and the fact that PLAINTIFF had issues with these things is the reason that PLAINTIFF "did not fit the culture" and the reason why he did not want PLAINTIFF "*to work for him any longer*".

208. PLAINTIFF was shocked that he was being terminated for objecting to the discriminatory conduct and that DEFENDANT TOUFOS was aware of such conduct but did not see any issues with the same.

209. As owner, DEFENDANT TOUFOS knew and/or should have known that the discriminatory comments made to his employee, based on his employee's race, was unlawful.

210. DEFENDANT TOUFOS also knew or should have known that terminating PLAINTIFF for objecting to and/or making a protected complaint is unlawful and retaliatory.

211. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

212. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, adverse employment actions, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

213. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

**AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*VICARIOUS EMPLOYER LIABILITY*
(As and Against DEFENDANT BELLA'S ICE CREAM)**

28

214. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

215. The New York City Administrative Code § 8-107(13) provides that:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1. the employee or agent exercised managerial or supervisory responsibility.

216. DEFENDANT TOUFOS violated the section cited herein as set forth.

217. DEFENDANT TOUFOS, as the owner and operator of DEFENDANT BELLA'S ICE CREAM, is liable for aiding and abetting DEFENDANT BELLA'S ICE CREAM in the discrimination and wrongful retaliation faced by PLAINTIFF.

218. DEFENDANT TOUFOS acted pursuant to his authority as owner and operator of DEFENDANT BELLA'S ICE CREAM.

219. DEFENDANT TOUFOS could not have subjected PLAINTIFF to such treatment but for DEFENDANT TOUFOS' role as owner and operator of DEFENDANT BELLA'S ICE CREAM.

220. DEFENDANT BELLA'S ICE CREAM is vicariously liable for the actions of DEFENDANT TOUFOS as DEFENDANT TOUFOS exercised managerial or supervisor responsibility as owner of DEFENDANT BELLA'S ICE CREAM.

221. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

222. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss

of income, adverse employment actions, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

223. COLLECTIVE DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

### AS A TENTH CAUSE OF ACTION Individual Liability
### UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
*(Aider and Abettor Liability Against DEFENDANT TOUFOUS Individually)*

224. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

225. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under the chapter, or attempt to do so."

226. DEFENDANT TOUFOS engaged in an unlawful **discriminatory** practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

227. DEFENDANT TOUFOS is individually liable for his individual discriminatory and retaliatory actions against PLAINTIFF as alleged above.

228. DEFENDANT TOUFOS was acting pursuant to his power, authority, and duty as owner/operator/manager of DEFENDANT BELLA'S ICE CREAM.

229. DEFENDANT TOUFOS herein utilized his positions, status, and authority as manager/supervisor/owner to subject PLAINTIFF to unlawful discrimination and retaliation as alleged above.

230. DEFENDANT TOUFOS had no good faith business justification for his actions herein.

231.    DEFENDANT TOUFOS is vicariously liable for the discriminatory, retaliatory, actions taken against PLAINTIFF as outlined above.

232.    At all times, DEFENDANT TOUFOS was aware of PLAINTIFF'S complaints and engagement in protected activity.

233.    DEFENDANT TOUFOS condoned, supported and ratified the discriminatory and hostile conduct against PLAINTIFF.

234.    DEFENDANT TOUFOS lack of action to help PLAINTIFF with regard to the obviously well-known discriminatory behavior of John Doe – as evinced by his statement that John Doe "*always says the N word*" - demonstrated that DEFENDANT TOUFOS was acquiescing to discrimination in the workplace at DEFENDANT BELLA'S ICE CREAM.

235.    Despite COLLECTIVE DEFENDANTS clear knowledge of the discriminatory actions against PLAINTIFF, COLLECTIVE DEFENDANTS did not make any effort to remedy the situation.

236.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, bonus, benefits, adverse employment actions, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

237.    PLAINTIFF is entitled to the maximum amount allowable under this law.

**AS AN ELEVENTH CAUSE OF ACTION FOR WAGE VIOLATIONS**
**NEW YORK STATE LABOR LAW - NYLL § 195(3)**

238.    PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

239.   NYLL § 195(3) required DEFENDANT BELLA'S to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed.

240.   DEFENDANT BELLA'S violated this law.

241.   As described above, DEFENDANT BELLA'S failed to furnish PLAINTIFF with wage notices or a statement regarding payments owed to PLAINTIFF throughout and up to his termination.

242.   While employed at BELLA'S, PLAINTIFF was asked to "train" by shadowing other drivers.

243.   This "training" required PLAINTIFF to interact with customers, operate BELLA'S machinery, take payment from customers and perform other duties necessary for the job.

244.   PLAINTIFF was employed by BELLA'S and was required to work (at least) 10 hours on the three occasions that PLAINTIFF worked on the trucks.

245.   Therefore, the payment to PLAINTIFF of $50 a day was well-below minimum wage and BELLA'S DEFENDANTS knew or should have known that PLAINTIFF was entitled to be paid, at least $15 per hour in accordance with the laws.

246. Further, BELLA'S failed to maintain proof/documentation of total hours worked for PLAINTIFF, and thus is not entitled to raise defenses to this claim.

247. Not only did BELLA'S not pay PLAINTIFF in accord with minimum wage standards, BELLA'S never provided PLAINTIFF with and proof of employment, proof of payment, proof of hours worked, or any wage and hour notices.

248. Pursuant to NYLL § 198(1-b), DEFENDANT BELLA'S is liable to PLAINTIFF in the amount of $50.00 for each day after the violation occurred, up to the statutory cap.

249. PLAINTIFF is entitled to the maximum amount of damages, fees, penalties, and costs allowed under this statute.

## AS A TWELFTH CAUSE OF ACTION VIOLATION OF MINIMUM WAGE LAWS UNDER NEW YORK STATE LABOR LAW § 652

250. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

251. Pursuant to NYLL § 653 DEFENDANT BELLA'S was required to pay PLAINTIFF in accordance with Federal and State minimum wages.

252. DEFENDANTS' policy, and claim, to PLAINTIFF that they did not pay employees to train, but would provide the employee with a $50 per day stipend, was unlawful from the outset.

253. At all times, DEFENDANTS were well aware that they would require PLAINTIFF to work above 3 hours during the training period and that PLAINTIFF would be required to work, as opposed to merely observing.

254. As such, DEFENDANTS were aware that they should have compensated PLAINTIFF in accordance with the New York State Labor Laws and that PLAINTIFF was entitled to a minimum wage of (at least) $15 per hour for each day worked.

33

255. However, DEFENDANTS paid PLAINTIFF $50 per day, regardless of the amount of hours worked, knowing that PLAINTIFF worked well-above 3 hours.

256. DEFENDANTS willingly and knowingly paid PLAINTIFF below minimum wage, knowing that doing so violated Federal, State and City minimum wage laws.

257. PLAINTIFF in entitled to the difference between what he was actually paid per day ($50) and what he should have been paid each day ($15 x ? hours per day)

258. Further, BELLA'S failed to maintain proof/documentation of total hours worked for PLAINTIFF, and thus is not entitled to raise defenses to this claim.

259. PLAINTIFF is also entitled to the maximum amount of damages, fees, penalties, and costs allowed under this statute.

**AS FOR A THIRTEENTH CAUSE OF ACTION**
**WHISTLEBLOWER RETALIATION UNDER NEW YORK LABOR LAW § 740(2)**

260. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

261. As per New York Labor Law § 740(2):

**2. Prohibitions.** An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:

**(a)** discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;

**(b)** provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or

**(c)** objects to, or refuses to participate in any such activity, policy or practice.

262. DEFENDANTS violated this section of the New York Labor Law with regard to PLAINTIFF.

263. PLAINTIFF disclosed the unlawful and dangerous conduct of Employee John Does 1 and 2 specifically because he was advised by DEFENDANT TOUFOS that DEFENDANT TOUFOS wanted to limit the amount of traffic tickets he receives from his trucks and truck drivers.

264. PLAINTIFF also disclosed the unlawful and dangerous conduct of Employee John Does 1 and 2 because PLAINTIFF had a bona fide and good faith belief and concern about the laws being routinely and systematically broken by the drivers, unsanitary conditions in the truck, which could cause injuries to customers, and the fact that Plaintiff's safety was placed at risk each day.

265. PLAINTIFF raised concerns as well because PLAINTIFF was concerned about his own safety, particularly, while sitting on milkcrates in the back of an ice cream truck, which was being operated in a manner that could have led to a serious accident.

266. At all times, PLAINTIFF was concerned about substantial and specific dangers to the public health or safety.

267. In direct response to PLAINTIFF'S disclosure (about laws being violated and discrimination) to his supervisor, DEFENDANT TOUFOS, PLAINTIFF was immediately terminated, on the spot.

## PUNITIVE DAMAGES ARE APPROPRIATE

268. PUNITIVE damages are appropriate against COLLECTIVE DEFENDANTS (individually and collectively) because their actions were willful, malicious, and committed with reckless disregard for the rights of PLAINTIFF.

## JURY DEMAND

269.   PLAINTIFF requests a jury trial on all issues to be tried.

   **WHEREFORE**, PLAINTIFF respectfully requests a judgment against COLLECTIVE DEFENDANTS:

A.   Declaring that COLLECTIVE DEFENDANTS engaged in unlawful employment practices prohibited Title VII, 42 U.S.C. §1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law (NYCHRL), and New York Labor State Laws;

B.   Awarding damages to PLAINTIFF for all lost wages and benefits resulting from COLLECTIVE DEFENDANTS' unlawful discrimination and to otherwise make PLAINTIFF whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding PLAINTIFF compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to PLAINTIFF'S reputation in an amount to be proven;

D.   Awarding PLAINTIFF punitive damages against the COLLECTIVE DEFENDANTS;

E.     Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.     Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just and proper to remedy COLLECTIVE DEFENDANTS' unlawful employment practices.


Dated:  New York, New York
        November 16, 2023

                                        **PHILLIPS & ASSOCIATES,**
                                        **Attorneys at Law, PLLC**


                                By:     _____/s/_____
                                        Alexandria Jean-Pierre, Esq.
                                        Gregory Calliste, Jr., Esq.
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 430
                                        New York, New York 10006
                                        T: (212) 248 - 7431
                                        F: (212) 901 - 2107
                                        gcalliste@tpglaws.com
                                        ajean-pierre@tpglaws.com